CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 28 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TIFFANY S. BROWN,                    )
                                     )
            Plaintiff,               )    Civil Action No. 7:15-CV-00204
                                     )
    v.                               )    **MEMORANDUM OPINION**
                                     )
MOUNTAINVIEW CUTTERS, LLC,           )    By: Hon. Glen E. Conrad
                                     )    Chief United States District Judge
            Defendant.               )
                                     )

On September 9, 2016, a jury found for Tiffany S. Brown ("Brown") on her retaliation claim brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Plaintiff has now filed a motion seeking back pay, front pay or reinstatement, and an injunction prohibiting discriminatory employment practices, in addition to a motion for attorneys' fees and costs. For the following reasons, both motions will be granted in part and denied in part.

### Background

Brown began working for Mountainview Cutters, LLC ("Mountainview Cutters") in February of 2012 as a hair stylist. While at Mountainview Cutters, Brown believed she was the subject of racial discrimination. On December 2, 2012, Brown complained about the perceived discrimination by writing "EEOC" and other words upon a company white board visible to supervisors and other employees. When Brown returned to work on December 4, 2012, Mountainview Cutters terminated her employment.

Brown filed the instant action on April 27, 2015, claiming race discrimination and retaliation in violation of Title VII. Neither party filed dispositive pre-trial motions, and a bifurcated jury trial was conducted from September 6 through 9, 2016. At trial, an expert opined that many of the "write ups" Brown received for improper behavior—including the negative review that resulted in her

termination—could have been written in very close temporal proximity despite the different dates that the documents reflected. Brown also introduced evidence that, after termination, she searched for and applied for jobs in person and online. Evidence of Brown's depression, which she suffered from in 2013, was also introduced. By December 2013, however, Brown obtained another stylist job which commenced in March of 2014. At this job, she was offered a "key holder" position, but she declined this extra responsibility. After taking some business classes, Brown left her job in December of 2014 and opened her own salon in January of 2015.

Following the liability phase of the bifurcated trial, a jury found for Brown on her retaliation claim. Upon hearing evidence of plaintiff's damages, the jury awarded plaintiff $20,000 in punitive damages and $0 in compensatory damages. The case is now before the court on Brown's motions for attorneys' fees and costs, and her motions for back pay, front pay, and injunctive relief. The defendant has responded to the motions, and the matters are ripe for review.

## Discussion

### I. Back Pay, Front Pay, and Injunctive Relief

The dual purposes of Title VII are the "elimination of employment discrimination and the restoration of persons aggrieved to the situation they would have occupied were it not for the unlawful discrimination." Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 417 (1975)). A district court has "broad equitable discretion to award back pay, front pay, and interest to effectuate [Title VII's] remedial intentions." Ford v. Rigidply Rafters, Inc., 984 F. Supp. 386, 389 (D. Md. 1997); see Franks v. Bowman Transp. Co., 424 U.S. 747, 763-64 (1976); Albemarle Paper Co., 422 U.S. at 416-17. "A Title VII plaintiff who is unable to find comparable work is entitled to back pay 'as a matter of course.'" Ford, 984 F. Supp. at 389 (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358

(4th Cir. 1995)). In a retaliatory discharge case, a back pay award necessarily amounts to the "difference between what the [plaintiff] would have earned had the wrongful [termination] not occurred from the period of termination to judgment, and the [plaintiff's] actual earnings during that period." Id. However, "the right of a successful Title VII plaintiff to claim back pay is limited in degree by the statutory duty to mitigate employer damages." Brady, 753 F.2d at 1273. This duty to mitigate requires the plaintiff to be "reasonably diligent in seeking and accepting new employment substantially equivalent to that from which [s]he was discharged." Id. Because failure to mitigate is an affirmative defense, the defendant bears the burden of proof. Blizzard v. Newport News Redev. and Housing Auth., 635 F. Supp. 23, 26 (E.D. Va. 1985). An employer ordinarily must come forward with evidence that comparable work is available unless the employer can demonstrate that the plaintiff "made no reasonable attempt to find work." Wagner v. Dillard Dept. Stores, Inc., 17 F. App'x 141, 154-53 (4th Cir. 2001).

Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). It "compensate[s] victims of discrimination for the continuing future effects of discrimination until the victim can be made whole." Reed v. Virginia Dep't of Corrections, No. 7:13-CV-00543, 2014 WL 5810463, at *2 (W.D. Va. Nov. 7, 2014). "The award of front pay rests squarely within the district court's discretion, which must be 'tempered' by 'the potential for windfall' to the plaintiff." Id. (quoting Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 504 (4th Cir. 2001)). The court, therefore, "must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award." Ford, 984 F. Supp. at 392; see Evans v. Larchmont Baptist Church Infant Care Ctr., Inc., 956 F. Supp. 2d 695, 708 (E.D. Va. 2013) (declining to award front pay when doing so would require "assum[ing] certain unknowns" and "would [therefore] be unduly speculative and inappropriate").

3

Injunctive relief is "uniquely designed" to help prevent employment discrimination. See Spencer v. General Elec. Co., 703 F. Supp. 466, 469 (E.D. Va. 1989). Injunctive relief is not mandatory and is necessary "[o]nly where there are lingering effects or a not insubstantial risk of recurring violations." Id. If, upon examining the circumstances of the case, the court concludes that there exists a "cognizable danger of recurrent violations," injunctive relief may be granted. Id. (quoting United States v. Hunter, 459 F.2d 205, 210 (4th Cir. 1972)).

Plaintiff asserts that she is entitled to back pay in the amount of $22,106.04.[1] Mountainview Cutters argues that Brown failed to mitigate and contends that plaintiff is entitled to only three months of back pay or, at the very most, six. In support of its argument that Brown failed to mitigate her damages, defendant cites to the following facts: (1) that plaintiff submitted an application to a salon in December 2012 knowing that it did not have any openings, (2) that plaintiff accepted a part-time position at a different salon in 2013 despite being offered a "key-holder" position at that same salon, (3) that plaintiff voluntarily left this part-time position in December of 2014, and (4) that plaintiff opened her own business in January of 2015. Mountainview Cutters argues that self-employment is not sufficiently comparable employment to fulfill plaintiff's duty to mitigate. Brown agrees that she submitted applications to the two salons defendants cite. She also argues that she testified to searching online and using an online portal to apply for various other positions. Additionally, Brown enrolled in once-weekly, hour-and-a-half business classes for two months in 2014 for the purposes of opening her own business, which she did in January of the following year. Brown believes these actions demonstrate a reasonable effort to mitigate.

---

[1]     Plaintiff arrives at this sum by first determining what amount plaintiff actually earned in 2012 while working for Mountainview Cutters: $11,787.76. Plaintiff then adds $720 to this number, representing thirty hours per week for the three weeks remaining in 2012. Plaintiff maintains that she would have worked these hours had she not been terminated on December 4, 2012. From this combined number, she subtracts the wages she actually earned in 2013 to determine the back pay amount for 2013. She does the same for 2014 and 2015. Plaintiff uses her 2015 earnings to forecast her 2016 earnings to determine the amount of back pay for 2016. The sum for all four years is $22,106.04.

4

The court cannot agree that Brown's award of back pay should be temporally limited to three to six months. The evidence adduced at trial demonstrates that Brown applied for other jobs upon her termination and secured employment in late 2013. Importantly, while defendant argues plaintiff should have obtained comparable employment sooner, it has produced no evidence demonstrating that comparable work was indeed available. See Wagner, 17 F. App'x at 153 ("[A]n employer ordinarily must come forward with evidence that comparable work is available."). Instead, defendant argues that Brown applied to a salon where no positions were available. Def. Resp. at 4, Docket 104. Defendant has also failed to present any evidence supporting its argument that the "key-holder" position Brown declined came with more hours, greater pay, or was otherwise more comparable to Brown's position at Mountainview Cutters. Nor does the court believe that opening one's own business is evidence of a failure to mitigate, as defendant urges. See Coronet Foods, Inc. v. N.L.R.B., 158 F.3d 782, 801 (4th Cir. 1998) ("Self-employment mitigates income loss.") (citing Heinrich Motors, Inc. v. N.L.R.B., 403 F.3d 145, 148 (2d Cir. 1968) ("It is indisputable that self-employment is an adequate and proper way for the injured employee to attempt to mitigate his loss of wages.")). However, Mountainview Cutters has established that, for a portion of 2013, Brown was not reasonably diligent in mitigating her damages. While she was suffering from depression, she did not seek treatment in a reasonable amount of time so that she could continue to find work. The court will adjust plaintiff's award accordingly.

Brown also seeks prejudgment interest on her back pay award. "Title VII authorizes prejudgment interest as part of the back pay remedy." Loeffler v. Frank, 486 U.S. 549, 557-58 (1988). The court will apply Virginia's six percent statutory judgment rate to this award. See Va. Code § 6.02-302; E.E.O.C. v. Liggett & Myers, Inc., 690 F.2d 1072, 1074 (4th Cir. 1982) (stating that a district court may, in its discretion, choose to apply an interest rate provided for by state law);

Cooper v. Paychex, Inc., 960 F. Supp. 966, 974 (E.D. Va. 1997) (applying the Virginia statutory rate to a Title VII judgment). This interest will also be compounded to reflect the "economic reality" that "[b]ut for [Mountainview Cutters'] conduct, [Brown] would have had access to this money during the back pay period and would have been able to earn interest not only on the principal amounts, but also on accumulated interest." Hylind v. Xerox Corp., 749 F. Supp. 2d 340, 351 (D. Md. 2010), rev'd on other grounds, 481 F. App'x 819 (4th Cir. 2012).

Brown next seeks front pay or, in the alternative, reinstatement. The parties, however, agree that reinstatement is inappropriate in this case. See Pl.'s Br. at 5, Docket No. 100; Def.'s Resp. at 7, Docket No. 110; Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001) ("In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement."). Therefore, Brown requests annual front pay of $4,500 for the next five years, arguing that it is reasonable to suspect that she will, for the foreseeable future, continue to accrue damage in the form of lost wages. The court, however, is unable to justify an award of front pay on the record before it.

The establishment of her own business and the part-time nature of Brown's other employment in conjunction with the associated fluctuating hours, make the events which could justify such an award insufficiently predictable. See Ford, 984 F. Supp. at 392 (finding future events insufficiently predictable to justify an award of front pay). Brown testified that she was hopeful as to her new business and that she did not intend to seek other employment. Although she is earning less now than when she was employed by Mountainview Cutters, there is no evidence that this disparity will continue. Indeed, Brown may ultimately earn more by owning her own business than if she had remained employed at Mountainview Cutters. Because "front pay can result in an unfair

6

windfall for the plaintiff [and] must be granted sparingly," and because the court believes that the evidence upon which it could calculate a reasonably certain front pay amount is lacking, the court declines to make such an award. Ford, 984 F. Supp. at 391.

Finally, Brown asks that the court impose a permanent injunction against Mountainview Cutters. However, the court cannot find that Brown has identified any "lingering effects" or a "not insubstantial risk of a recurring violation." Spencer, 703 F. Supp. at 469. The court does not perceive, from the record, any suggestion that Brown intends to return to work at Mountainview Cutters. Additionally, plaintiff's direct supervisor, who was intricately involved in Brown's termination, is no longer employed at Mountainview Cutters, nor is one of the individuals plaintiff alleged discriminated against her. From these facts, the court believes that there is no "cognizable danger of recurrent violations" warranting injunctive relief. Id. Therefore, the court will grant in part and deny in part plaintiff's motion for back pay, front pay or reinstatement, and injunctive relief.

## II.     Attorneys' Fees & Litigation Costs

In addition to back pay, front pay, and injunctive relief, plaintiff also seeks to recover her attorneys' fees and litigation costs. A prevailing party in a Title VII action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1976); see 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter[,] the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee...as part of the costs..."). In Hensley, the Supreme Court stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. The Fourth Circuit has adopted twelve factors that courts should consider when determining this

"lodestar" amount. See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting factors set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questioned raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity cost in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fees in similar cases. See Johnson, 488 F.2d at 717-19. A party seeking attorneys' fees must set forth complete and accurate time records to enable the court to make an appropriate calculation and award. See Daly v. Hill, 790 F.2d 1071, 1079 (4th Cir. 1986).

Brown seeks a total award of $134,571.22, comprised of $122,275.00 in attorneys' fees and $12,296.22 in costs. Pl.'s Br. at 4-8, Docket No. 98. Mountainview Cutters does not oppose an award of attorneys' fees and litigation costs in this action. Def.'s Resp. at 2-3, Docket No. 105. Mountainview Cutters contends, however, that the court should award Brown a lesser amount than she requests. Mountainview Cutters argues (1) that counsel's rate and the hours spent on the case were unreasonable and excessive; (2) that the amount of time likely spent on the discrimination claim should be considered in discounting the award; and (3) that Brown achieved minimal success on her retaliation claim. Thus, Mountainview Cutters maintains that the award of attorneys' fees should be discounted accordingly.

Brown asks that her lead attorney be compensated at an hourly rate of $400, that the associate attorney be compensated at an hourly rate of $225, and that the paralegal be compensated

8

at $125 per hour. Mountainview Cutters contends that this is unreasonable. The burden is on the plaintiff to prove that the hourly rate requested is reasonable. See McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013). When determining a reasonable rate, the court should consider the prevailing market rate in the relevant community, as well as the background and experience of the individual lawyers involved. See Missouri v. Jenkins, 491 U.S. 274, 285-86 (1989); Johnson, 488 F.2d at 719. The prevailing market rate can be established through evidence of the attorneys' billing practices, comparison to fee awards in similar cases, and affidavits reciting fees of counsel from the relevant community with similar qualifications. See Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987).

Brown's attorneys, Mr. Terry Grimes and Ms. Brittany Haddox, have submitted affidavits outlining their educational backgrounds and professional experience. See Pl.'s Br. Exs. 2, 3, Docket Nos. 98-2, -2. According to his affidavit, Mr. Grimes, Brown's lead attorney, was admitted to practice law in Virginia in 1984. He has practiced in the Western District since 1986. For the past twenty years, the majority of his practice has been devoted to federal statutory claims, including those arising under Title VII. According to her affidavit, Ms. Haddox was admitted to practice law in Virginia in 2013. She then began her practice, which is almost exclusively comprised of litigation with a focus on employment and criminal law, in November of 2013.

Brown provides affidavits from other attorneys who state that they actively practice employment law in the Western District of Virginia and that they are familiar with Mr. Grimes' and Ms. Haddox's educational backgrounds and levels of expertise. These individuals aver that an hourly rate of $400 for Mr. Grimes and $225 for Ms. Haddox "is reasonable and consistent with the rates charged by employment lawyers in the Western District of Virginia with their qualifications and expertise." See Pl.'s Br. Ex. 1, Docket No. 98-1. After reviewing the affidavits submitted and fee awards in similar cases, the court finds that an hourly rate of $350.00 is reasonable for the work

9

performed by Mr. Grimes, and that an hourly rate of $225.00 is reasonable for the work performed by Ms. Haddox. The court will apply these rates when calculating the fee award in this case.[2]

The court next addresses whether Brown is entitled to compensation for all hours incurred in preparation of her case. Brown seeks to be compensated for 209.5 hours billed by Mr. Grimes and 146.9 hours billed by Ms. Haddox, in addition to 41.9 hours billed by a paralegal, for a total of 398.3 hours. See Pl.'s Br. At 8, Docket No. 98. Mountainview Cutters contends that the number of hours billed was excessive and makes several objections. The court will reduce the hours billed by Brown's attorneys for the following reasons.

First, the use of excessively vague time descriptions is a generally disfavored billing practice. Such descriptions "inhibit the court's reasonableness review" and also "justify a percentage reduction in the fee awarded." Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., No. 2:05-2782, 2015 WL 4469765, at *10 (D. S.C. July 21, 2015) (citing cases). The court agrees with Mountainview Cutters that a portion of plaintiff's counsel's time entries are too vague and inadequately describe the tasks performed by counsel. Examples of such entries include "review file," "work on discovery," and "trial preparation." The vagueness of these entries weighs in favor of a reduction in the amount of fees awarded.

Second, the court notes that "in this circuit...purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), [and] they should not be compensated for at all." Two Men & A Truck/Int'l, Inc. v. A Mover, Inc., 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) (citing cases); see also Jenkins, 491 U.S. at 288 n. 10 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate"). Examples of clerical tasks include: filing documents

---

[2]    In general, the court has compared the instant case to LaMonaca v. Tread Corp., 157 F. Supp. 3d 507 (W.D. Va. 2016), and Reed v. Dep't of Corrections, No. 7:13-CV-00543, 2015 WL 2374193 (W.D. Va. May 18, 2015), among others.

with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls. Two Men & A Truck/Int'l, Inc., 128 F. Supp. 3d at 929-30 (citing cases). Here, the billing records submitted by Brown include a number of entries for clerical tasks performed by the paralegal. Such tasks include scanning, e-filing with the court, calculating mileage fees, and other items. These types of clerical tasks, billed at the paralegal's hourly rate, justify a further reduction in the fees awarded.

Third, Mountainview Cutters asks that the court discount the award based on the amount of time likely spent on the unsuccessful discrimination claim and the limited success of the retaliation claim. Brown argues that the related discrimination claim furthered the successful retaliation claim, citing Hensley v. Eckerhart's pronouncement that when a claim for relief involves a common core of facts or is based on related legal theories, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435. Additionally, Brown argues that her retaliation claim was successful, especially in light of the fact that the jury was not asked to determine back pay or front pay.

When a plaintiff's results have been "excellent," the award should account for "all hours reasonably expended on the litigation," even if some claims prove unsuccessful. Id. at 436. Conversely, when a plaintiff "has achieved only partial or limited success," the court should reduce the award to prevent the plaintiff from obtaining "an excessive amount" in comparison to her low measure of success. Id. This is true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id.

The court agrees that Brown's successful retaliation claim was largely borne of the same set of facts as her unsuccessful racial discrimination claim. The court does not believe, however, that

those claims are so "inextricably intertwined" as to require the court to award Brown the full amount she seeks. Brown spent considerable time presenting evidence of racial discrimination, including coworkers calling her "an angry black woman" and not providing her with information about work-related social events. Much of that evidence likely had no bearing on the jury's favorable decision on her retaliation claim, which was largely supported by the temporal proximity between the protected activity and the adverse action. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)("[A] causal connection for purposes of demonstrating a prima facie case exists when the employer takes [an] adverse employment action...shortly after learning of the protected activity."). Therefore, the court believes that some further reduction in Brown's requested award is proper due to the amount of time spent on the unsuccessful discrimination claim.

The court, however, does not believe that Brown's award should be reduced because of the "limited success" of her retaliation claim itself. As discussed above, Brown is entitled to back pay. Significantly, Brown proved such outrageous conduct by the defendant that the jury believed punitive damages to be appropriate. These punitive damages were awarded in addition to the successful vindication of "important civil and constitutional rights that cannot be valued solely in monetary terms." City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) ("Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."). Therefore, the court does not believe a further reduction, beyond what has already been discussed, is justified.

For these reasons, the court is unable to find that each and every hour billed by Brown's attorneys was reasonable. In such circumstances, "courts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage." In re Outsidewall Tire Litig., 52 F. Supp. 3d 777, 789 (E.D. Va. 2014) (collecting

12

cases). Based on the court's review of the records submitted and its knowledge of the case and others like it, the court finds it appropriate to reduce the number of hours billed by Mr. Grimes and Ms. Haddox by 15 percent, and the number of hours billed by the paralegal by 20 percent.

Brown also seeks to recover litigation costs in the amount of $12,296.22. Mountainview Cutters objects to the costs expended to hire a handwriting expert and argues that Brown incurred additional costs by failing to accept a reasonable settlement or provide a timely counteroffer to Mountainview Cutters' offers of settlement. The court does not believe that Brown acted unreasonably in hiring a handwriting expert. In this case, the jury may have heavily relied upon the testimony of the expert in determining that punitive damages were warranted.

As to defendant's argument that Brown failed to accept a reasonable settlement or provide a timely counter offer, the court cannot agree. On September 1, 2016, Mountainview Cutters offered a sum of $45,000, likely inclusive of attorneys' fees and costs in addition to any equitable relief. By 10:00 a.m. the very next morning, Brown informed Mountainview Cutters that she would accept $95,000 in settlement. This interaction came after Brown had not responded or countered Mountainview Cutters' offer of $30,000. The court does not believe, in light of the jury's decision to award punitive damages, the back pay awarded, and the attorneys' fees awarded, that Brown acted unreasonably in refusing to accept Mountainview Cutters' offer of $45,000 or in declining to consider Mountainview Cutters' offer of $30,000. The court also finds that the other litigation costs expended are reasonable and will therefore award litigation costs in the amount requested. Therefore, the court will grant in part and deny in part plaintiff's motion for attorneys' fees and litigation costs.

## Conclusion

For the reasons stated, Brown's motion for back pay, front pay, and a permanent injunction will be granted in part and denied in part. Brown's motion for attorneys' fees and costs will also be

granted in part and denied in part. Brown will be awarded $94,610.88[3] in attorneys' fees and $12,296.22 in costs. Brown will further be awarded $17,334.38[4] in back pay plus compounding prejudgment interest. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This _28th_ day of November, 2016.

_____

Chief United States District Judge

---

[3] The court arrives at this sum by reducing the hours billed for Mr. Grimes and Ms. Haddox by 15 percent and for the paralegal by 20 percent and then multiplying the reduced hours by the aforementioned hourly rates.

[4] To calculate this sum, the court took the amount Brown actually earned in 2012 plus $600, representing twenty-five hours of work a week for the remaining three weeks, and, from that number, deducted the amount Brown actually earned in a given prejudgment year. The court believes 25 hours is a more accurate approximation of the number of hours Brown would have worked each week in December of 2012 due to the part-time nature of Brown's employment at Mountainview Cutters. For 2013, the court reduced the sum by half, representing the time Brown was not reasonably diligent in mitigating her damages. For 2016, the court relied upon Brown's 2015 actual income, and prorated the figures to account for the date of judgment. The total of these figures is $17,334.38.